**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UMF CORPORATION and SWEPORTS, LTD., | ) |
| | ) 13-cv-8994 |
| Plaintiffs, | ) |
| | ) Judge Sharon Johnson Coleman |
| v. | ) |
| | ) |
| ACCUVAL ASSOCIATES, INC., and | ) |
| CAMERON COOK, *Senior Manager of AccuVal* | ) |
| *Associates, Inc.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This action is ancillary to a prolonged legal dispute between UMF Corporation and its majority owner Sweports, Ltd, on one side, and a group of aggrieved shareholders and financiers, on the other side. Their dispute, about a complex corporate financing deal, has resulted in numerous state and federal lawsuits. In 2007, in the course of the disagreement, UMF retained AccuVal Associates, an independent appraisal company, to value the company. Subsequently, in a state lawsuit between Sweports and the shareholders, the shareholders put forth testimony from Cameron Cook, an AccuVal senior manager, regarding AccuVal's valuation of UMF. Here, the UMF companies allege that AccuVal and Cook are liable based on Cook's in-court testimony. The defendants move to dismiss the case, and the court grants the defendants' motion.

**BACKGROUND**

UMF manufactures cleaning products, and Sweports owns a majority of the company's stock and various patents licensed to UMF. In 2006, the UMF companies brokered a complex financing deal with a group of outside investors. The details of the deal, though not of central importance to this case, are provided in the Illinois Appellate Court's opinion in *Dore v. Sweport Ltd.*, Nos. 1-12-

1

1980, 1-13-2419, 2014 IL App (1st) 121980-U (Ill. Apt. Ct. Apr. 28, 2014). As part of the deal, Sweports issued stock to the investors, and two of the investors joined Sweports's board. The deal, however, ultimately went awry, and Sweports terminated the investors' stock. This dispute has resulted in prolonged and ongoing litigation between the UMF companies and the investors.[1] *See id.*; *UMF Corp. v. Dore*, No. 1-12-2686, 2013 Il App (1st) 122686-U (Ill. App. Ct. Oct. 21, 2013); *Essex Ins. Co. v. Sweports, Ltd.*, No. 1-10-3386, 2011 IL App (1st) 103386 (Ill. App. Ct. Dec. 6, 2011).

In the course of this dispute, the UMF companies sought an independent valuation of UMF. The UMF companies retained AccuVal, which executed an engagement contract with UMF. Under the terms of the agreement, UMF would provide AccuVal with financial data and AccuVal would base its valuation on this data without verifying the accuracy of it. In October 2007, AccuVal delivered its appraisal report to UMF, valuing the company at $103,800,000. Dkt. # 21-2 at 30. The report explained that AccuVal did "not independently verif[y] the accuracy of the information supplied" to it by UMF. *Id.* The UMF companies acknowledge that "AccuVal fully performed its engagement." Dkt. # 21 at ¶ 43.

In 2007, the investors sued Sweports in state court over the termination of their stock. *Dore*, 2014 IL (1st) 121980-U, at *2. The trial court entered summary judgment for the investors, and the case proceeded to a jury trial on damages only. *Id.* On February 3, 2010, the investors subpoenaed AccuVal to produce "[a]ll documents relating to valuation services provided to UMF Corporation and Sweports, Ltd. including but not limited to reports, summaries, spreadsheets, private placement memoranda, correspondence, or any work product generated by AccuVal regarding UMF Corporation and Sweports, Ltd." Dkt. # 22-3. (Courts can consult public records like subpoenas when considering 12(b)(6) motions. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074,

---

[1] In 2011, the Illinois Appellate Court counted at least five lawsuits filed against the UMF companies as a result of this dispute. *See Essex*, 2011 IL App (1st) 103386, at *2.

2

1080 (7th Cir. 1997)). The trial court denied Sweports's motion to quash the subpoena and ordered AccuVal to produce the documents. Dkt. # 22-4. Subsequently, Sweports subpoenaed Cameron Cook, an AccuVal employee, to testify at a deposition. Dkt. # 22-5. Prior to trial, the investors disclosed their intent to call Cook as a witness to testify about AccuVal's valuation report. At trial, Cook testified about AccuVal's work for UMF, and the UMF companies maintain that he did so voluntarily and over their objections.

A jury awarded $1.265 million for the investors.[2] On April 28, 2014, the Illinois Appellate Court reversed the judgment in part and remanded for a new trial on the issue of liability. *Dore*, 2014 IL App (1st) 121980-U, at *4.

In October 2013, prior to the Illinois Appellate Court reversal of the judgment, UMF sued the defendants in state court alleging that AccuVal and Cook breached their fiduciary duty to UMF and conspired with the investors. The defendants removed the case to federal court, and the court granted Sweports's motion to intervene. The UMF companies' amended complaint raises claims against each defendant for breach of fiduciary duty, indemnification, and conspiracy.

**LEGAL STANDARD**

A complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[2] After the investors received judgment in their favor, they filed a petition in federal bankruptcy court to place Sweports in Chapter 11 bankruptcy. *In re Sweports, Ltd.*, No. 14-2423, 2015 WL 127384, at *1 (7th Cir. Jan. 9, 2015). Sweports consented and became the debtor in possession. On April 30, 2014, the bankruptcy court granted the U.S. Trustee's motion to dismiss the bankruptcy. Only this month did the Seventh Circuit resolve this litigation. *See id.* at *3–4.

3

**DISCUSSION**

The UMF companies sue the defendants for breach of fiduciary duty, indemnification, and conspiracy. The defendants argue that these civil claims depend on Cook's in-court testimony, for which Cook is immune from civil suit. Illinois law, which controls in this diversity case, recognizes the "doctrine of absolute privilege from civil suit for statements made in judicial proceedings." *Jurgensen v. Haslinger*, 692 N.E.2d 347, 349 (Ill. 1998); *accord MacGregor v. Rutberg*, 478 F.3d 790, 792 (7th Cir. 2007). Federal law recognizes a similar absolute immunity from liability under 42 U.S.C. § 1983 for witnesses giving testimony at trial. *Briscoe v. LaHue*, 460 U.S. 325, 333–34 (1983). The Illinois Supreme Court has gone so far as to uphold sanctions against a lawyer who filed a civil complaint based solely upon a witness's testimony. *Jurgensen*, 692 N.E.2d at 352. Here, the court agrees with the defendants that all the UMF companies' claims are based on Cook's testimony and, thus, are barred.

The UMF companies respond that the doctrine, both under Illinois and federal law, only bars defamation claims. This claim is contrary to Illinois law, the law of other states in the Seventh Circuit, and federal law. *See Jurgensen*, 692 N.E.2d at 350 (tortious interference); *McNall*, 784 N.E.2d at 239 (negligence); *see Giffin v. Summerlin*, 78 F.3d 1227, 1231 (7th Cir. 1996) (Indiana law; breach of contract); *see also Rehberg v. Paulk*, 132 S. Ct. 1497, 1505 (2012) (federal) ("[A] trial witness has absolute immunity with respect to *any* claim based on the witness' testimony." (emphasis in original)).

Further, the UMF companies suggest that a fiduciary duty owed by the defendants to the UMF companies warrants a departure from the usual rule. Even if the existence of such a duty did warrant a departure, no fiduciary relationship existed between the parties. A fiduciary relationship exists based either on a specially recognized context, such as that between attorney and client, or "where one party reposes trust and confidence in another, who thereby gains a resulting influence

4

and a superiority over the subservient party." *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1040 (Ill. 2012). Ordinarily, a normal contractual relationship creates no fiduciary duty, as "each party guards his own interests" "in a business transaction." *Ransom v. A.B. Dick Co.*, 682 N.E.2d 314, 322 (Ill. App. Ct. 1997). The UMF companies and AccuVal were sophisticated entities that bargained at arm's length for a service, and the complaint fails to allege a fiduciary relationship between the contracting parties. At least one court in this district, analyzing cases from other jurisdictions, concluded that "an independent auditor generally is not in a fiduciary relationship with its client." *Resolution Trust Corp. v. KPMG Peat Marwick*, 844 F. Supp. 431, 436 (N.D. Ill. 1994). That analysis, though not binding, appears correct. The UMF companies point to the affidavits of a former AccuVal employee and of UMF employees indicating their belief that a fiduciary relationship existed. The opinions expressed in the employees' affidavits do not alter the legal nature of the relationship between the parties. Thus, the relationship between the parties does not permit the UMF companies to evade the doctrine of witness immunity. Because no fiduciary relationship existed, the UMF companies' claims for breach of fiduciary duty also fail as a matter of a law.

The complaint also does not adequately allege conspiracy claims. "A cause of action for civil conspiracy exists only if one of the parties to the agreement commits some act in furtherance of the agreement, which is itself a tort." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). "[T]he gist of a conspiracy claim is not the agreement itself, but the tortious acts performed in furtherance of the agreement." *Id.* The only act alleged in furtherance of the conspiracy between the defendants and the aggrieved shareholders is Cook's testifying in court. The UMF companies' complaint emphasizes the defendants' alleged pre-testimonial act of joining the outside investors' scheme. But this is insufficient. The UMF companies must allege an act in furtherance of the conspiracy *in addition to* the act of conspiring itself. *Id.* The conspiracy claims, even if not barred because of witness immunity, fail as a matter of law.

The UMF companies' indemnification claims, which the court construes as claims seeking a declaration that the defendants are obligated to indemnify the UMF companies for expenses from the primary litigation, also fail. The UMF companies seek indemnification not based on a contractual provision but based on a supposed agency relationship between the parties. It is true that Illinois recognizes an implied duty to indemnify from the relationship between certain parties, such as principal and agent. *Frazer v. A.F. Munsterman, Inc.*, 527 N.E.2d 1248, 1251 (1988); *accord BCS Ins. Co. v. Guy Carpenter & Co., Inc.*, 490 F.3d 597, 603 (7th Cir. 2007). But no agency relationship existed between UMF and AccuVal, who were simply parties to a service contract. (Further, Sweports and AccuVal do not appear to have had *any* relationship, let alone an agency relationship.) *See* Restatement (Third) of Agency § 1.01 cmt. c (2006) ("[I]f a service provider simply furnishes advice and does not interact with third parties as the representative of the recipient of the advice, the service provider is not acting as an agent."). The indemnification claims fail.

In addition to making a 12(b)(6) argument, the defendants move to dismiss the complaint for improper venue under Rule 12(b)(3) because of a binding arbitration provision in the appraisal contract between UMF and AccuVal. Here, too, the court agrees with the defendants. The engagement contract between the parties, appended to the UMF companies' complaint, states: "The parties to this engagement . . . agree to submit all controversies, claims, and matters of difference arising out of, or relating to, this engagement to arbitration . . . ." Dkt. # 21-3 at 9. At issue is whether this provision encompasses the UMF companies' claims. The Supreme Court has emphasized, time and time again, that federal courts must apply this provision against the backdrop of a federal policy supporting a presumption in favor of arbitration. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Co.*, 460 U.S. 1, 24–25 (1983); *see AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011).

The arbitration provision covers any dispute "relating to" to the engagement. The UMF companies argue that the engagement ended in 2007 when AccuVal submitted its valuation report and that Cook's 2011 testimony is *not* related to that engagement. But the UMF companies' claims for breach of fiduciary duty rest upon an alleged fiduciary relationship that arose solely from the engagement contract. And the indemnification claims also depend on an alleged agency relationship that arose solely from the engagement contract. The conspiracy claims also relate to the engagement. The court is aware of the UMF companies' theory of the case: that the parties formed a contractual relationship, that UMF shared confidential information with AccuVal, that the defendants "sold out" to the aggrieved investors, and that Cook, as part of the broader scheme, testified against the UMF companies. The UMF companies' claims, any way the court looks at them, relate to the parties' engagement and are thus covered by the binding arbitration provision.

**CONCLUSION**

The UMF companies' claims fail on multiple grounds. The court grants the defendants' motion [22] and dismisses the complaint in its entirety with prejudice. The court also strikes as moot the defendants' prior motion [8] to dismiss.

DATED: January 20, 2015

SHARON JOHNSON COLEMAN
United States District Judge